CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 13 2007

JOHN F. CORCORAN, CLERK
BY:
　　DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RODNEY C. WILLIAMS, ) | |
|    Plaintiff, ) | Civil Action No. 7:07CV00199 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| MAJOR FLEMING, et al., ) | |
|    Defendants. ) | By: Hon. James C. Turk |
| ) | Senior United States District Judge |

Plaintiff Rodney C. Williams ("Williams"), a Virginia inmate proceeding pro se, brings what this court will construe as a civil rights Complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Williams alleges violations of his First and Eighth Amendment rights and seeks monetary damages in the amount of $40,000.00. He also requests a jury trial. Upon review of the record, the court concludes that Williams has not stated a claim upon which relief can be granted and, therefore, dismisses the Complaint,[1] pursuant to 28 U.S.C. § 1915A(b)(1).[2]

I.

Williams alleges that the defendants "[h]arassed and retaliated against him for [e]xercising his [r]ights of Freedom of Religion" in violation of the First and Eighth Amendments. (Compl., Attach. 3.) Williams alleges the following sequence of events from which his claims arise. On March 15, 2006, Augusta Correctional Center ("ACC") staff, specifically Security Officers Watts

---

[1] On June 11, 2007, this court granted Williams' Motion to Amend his Complaint. The court, for the second time, ordered Williams to particularize his claims as he failed to state any facts concerning the specific conduct of many of the defendants. Williams filed his Response on August 31, 2007. This second motion to amend will also be granted.

[2] Section 1915A(b)(1) provides that the court shall dismiss a prisoner complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

and Perkins[3], began a "pattern of harassment" by searching Williams' cell. (Compl., Attach. 3.) Even though no contraband was found during the original search, the officers searched Williams' cell on several other occasions. During these searches the officers confiscated canteen items claiming that Williams "had to[o] much" or that the items were expired. (Compl., Attach. 3.) On one occasion Sergeant Rife, ACC Security Staff Supervisor, searched Williams' cell with a drug dog. Even though no contraband was found in the cell, Williams was required to provide a urinalysis sample for drug testing. After the sample tested positive for drugs, Williams requested that he be allowed to take a drug test. His request was denied and he was placed in the segregation unit. On March 25, 2006, Williams' mother and wife arrived at the ACC. The ACC staff, specifically Lieutenant Boyers, refused to allow Williams to visit with his family, claiming that his status as a segregation inmate barred visitation privileges.

In order to cope with the fact that he was "being harassed and treated differently than the other inmates," Williams explains that he began to fast for forty days and forty nights pursuant to his Christian religious beliefs. (Compl., Attach. 5.) He contacted the ACC Chaplain and requested literature for assistance with his fast. Subsequently, Williams was informed by the ACC security staff that any attempt to fast for such an extended period would be perceived as a hunger strike and that they would strap him down and "force-feed" him through a tube if he continued to refuse to eat. (Compl., Attach. 6.) Williams broke his fast on April 21, 2006. On April 23, 2006, Williams claims that Officer Jackson placed a live centipede in Williams' food in retaliation for his attempt to fast. Williams claims that the officers improperly interfered with his exercise of a religious fast and that

---

[3] The court notes that Officer Perkins is not a named Defendant in Williams' original Complaint but Williams does refer to Perkins in an attachment. Accordingly, the court will include Officer Perkins as a Defendant in this matter.

2

no disciplinary action was taken against the officers for their harassment and retaliation. Williams claims that Lieutenant Dawson should also held liable because he was the building supervisor and the retaliation had been brought to his attention.

Williams further alleges that the defendants "acted with deliberate indifference" and "inflicted unnecessary and wanton pain and suffering" when they used excessive force against him. (Compl., Attach. 3 at 2.) On May 11, 2006, Williams was escorted by both Sergeant Cristain and Officer Byars to an outside recreation cage. Williams was placed into an unlocked cage surrounded by other inmates, with his hands cuffed behind his back. Williams requested that the cage be locked and the handcuffs removed, but the officers refused. Williams contends that every other inmate had their handcuffs removed. Williams explains that Officer Pritt, who was operating the control booth that day, contributed to the situation by failing to report that a pair of handcuffs had not been turned in by the escorting officers. Williams was left in the cage for two to three hours in the rain. During this time, Williams began yelling for the officers and at some point fell to the ground, causing a cut to his head. Williams also injured his leg, knee, groin, and back area during the fall. Williams was seen by the medical staff and given treatment for his injuries at the end of the recreation period. Williams alleges that these actions were taken in retaliation for the grievances that he had recently filed concerning his fasting. Williams claims that, as Major Fleming is the security supervisor, he is responsible for the actions of Sergeant Cristain and Officer Byars. Williams is currently incarcerated at Sussex II State Prison.[4]

---

[4] Williams states that he has "no problem with Sergeant Rife or Officer Watts being removed as Defendants even though [he] feel[s] the two were part of the extra problems." (Pl.'s Resp. at 3.) As Williams seem to be voluntarily dismissing Rife and Watts as Defendants in this matter and he makes no allegations as to their personal involvement despite his three opportunities to do so, the claims against these Defendants will be dismissed.

3

## II.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). The court finds that Williams fails to make any allegation of fact which, if true, would amount to a constitutional violation.

### A. First Amendment Claim

Williams' claim that officers harassed and retaliated against him for exercising his religious beliefs are without merit. An inmate must point to specific facts which tend to support his allegation of retaliation. See White v. White, 886 F.2d 721, 724 (4th Cir. 1989). Bare assertions of retaliation do not establish a claim of constitutional dimensions. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (federal courts should regard inmate claims of retaliation with "skepticism"). In addition, to state a claim of retaliation, a plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right.

Williams fails to allege sufficient facts to support his claim that the officers retaliated against him. First, in regard to the cell searches, Williams seems to ignore the fact that his attempt to fast did not occur until well after he claims the searches of his cell occured. Regardless, merely searching an inmate's cell and confiscating contraband is insufficient to state a constitutional claim. In Bell v. Wolfish, 441 U.S. 520, 557 (1979), the Supreme Court held that the practice of conducting unannounced searches of prisoners' cells at irregular intervals does not violate the Fourth Amendment. These searches are aimed at the discovery of contraband, including drugs and weapons, which the inmates may have illicitly obtained or brought into the prison from the outside.

4

In Hudson v. Palmer, 468 U.S. 517, 525-26 (1984), the Court went even further and established a bright-line rule that prisoners have no legitimate expectation of privacy in their individual cells which would entitle them to Fourth Amendment protection. As Williams cannot allege that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right, his claim concerning the searches of his cell fails.

Furthermore, Williams' contention that the denial of a visit with his mother and wife supports his retaliation claim is also without merit. Williams again fails to prove any retaliatory motive for the denial of his visit as his attempt to fast occurred over a month after his mother and sister attempted to visit him at the prison. Moreover, neither prisoners nor would-be visitors have constitutional rights to prison visitation. White v. Keller, 438 F. Supp. 110, 115 (D. Md. 1977) (leaving open the possibility that a permanent ban on all visitation could implicate the Eighth Amendment), aff'd, 588 F.2d 913 (4th Cir. 1978); see also Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989) (no right guaranteed directly by the Due Process Clause). Finally, Williams' claim that Officer Jackson placed a live centipede in Williams' food in retaliation for his attempt to fast fails as well. The only support that Williams offers for this claim is that Jackson handed Williams his tray that day. Such a tenuous connection is insufficient to support a claim of retaliation. Therefore, the court finds that Williams' allegations of retaliation, even when viewed in the light most favorable to him, fail to state a claim upon which relief may be granted under § 1983.

The court also finds that Williams' allegations fail to state any claim that Defendants' actions violated his constitutional rights by interfering with his religious fast. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of

5

religion, or prohibiting the free exercise thereof . . . ." U.S. Const. Amend. I. In order to establish a right under the Free Exercise Clause, Williams must make two threshold showings: (1) that he sincerely holds his religious beliefs, and (2) that his claims are rooted in religious belief and are not "purely secular." Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972); see also Cruz v. Beto, 405 U.S. 817, 822 (1977) (finding that inmates retain the right to free exercise of sincere religious beliefs). In protecting inmates' constitutional rights, federal courts must give proper deference to prison officials' expertise in furthering the valid needs of the penological system. Bell v. Wolfish, 441 U.S. 520, 562 (1979). Even "when a prison regulation impinges on [an inmate's] constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987); Turner v. Safley, 482 U.S. 78, 89 (1987). The court can conceive of several valid penological interests in prohibiting an inmate from fasting for forty days and forty nights, including preserving the inmate's health and preventing an inmate from having a weakened condition that subjects him to a risk of assault from other inmates. Furthermore, Williams admits that he refrained from fasting on his own volition. Accordingly, the court finds that Williams fails to state a First Amendment claim upon which relief may be granted under § 1983 and the claims against Officers Perkins and Jackson, and Lieutenants Boyers and Dawson will be dismissed.[5]

**B. Eighth Amendment Claim**

The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337, 345-47 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions

---

[5] To the extent that Williams alleges that the threat of force feeding was cruel and unusual punishment, in violation of the Eighth Amendment, his claim fails because he does not allege any physical or mental injury. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993).

6

resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991).

To satisfy the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions, see Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir.1997); Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993), or that plaintiff's continued, unwilling exposure to the challenged conditions creates a substantial risk of such harm, see Helling v. McKinney, 509 U.S. 25, 31 (1993). To satisfy the subjective element of a conditions claim, a plaintiff must show that the defendant officials acted with deliberate indifference toward the risk of harm. Farmer v. Brennan, 511 U.S. 825, 835 (1994); Taylor v. Freeman, 34 F.3d 266, 271 (4th Cir.1994). To prove deliberate indifference by an official, a plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed and that he actually drew that inference. Id. at 837. Then, the plaintiff must show that the official disregarded the risk by failing to take "reasonable measures" to alleviate the risk. Id. at 832.

Having reviewed Williams' allegations regarding Major Fleming, Sergeant Cristain, Officer Byars, and Officer Pritt, the court concludes that Williams has failed to alleged sufficient facts to survive the court's sua sponte review. Even if the officers intentionally left Williams handcuffed and in an open cage, Williams fails to allege sufficient facts illustrating that the officers were aware of any actual, serious risk or that they knew their acts would cause him significant harm.[6]

---

[6] Although Williams refers to this claim as a "use of excessive force," the claim is better analyzed under jurisprudence concerning the deliberate indifference to a hazardous condition.

7

Furthermore, Williams fails to claim that he sustained a serious or significant mental or physical injury. He alleges nothing more than a minor cut and unspecified muscular injuries for which he received medical treatment on the same day that he was injured. Accordingly, Williams' claim must be dismissed.[7]

### III.

Based on the foregoing, the court finds that Williams has not presented any claims that constitute a violation of his constitutional rights. Accordingly, the court dismisses the Complaint pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk of Court is directed to send copies of this Memorandum Opinion and accompanying Order to Plaintiff.

ENTER: This 13th day of September, 2007.

*Senior United States District Judge*

---

[7] To the extent that Williams may be claiming that the officer's alleged statements themselves constitute a constitutional violation, this claim also fails. Verbal abuse and harassment by prison employees, without more, does not state a claim of cruel and unusual punishment. See Cullins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (holding that the Sheriff's actions in laughing at and threatening to hang the plaintiff were not sufficient to show the deprivation of a constitutional right). The Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Therefore, a prison employees' verbal harassment or idle threats to an inmate, even if they cause an inmate fear, anxiety, or discomfort, do not constitute an invasion of any identified liberty interest. Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (verbal threats causing fear for plaintiff's life were not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate his constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."). Accordingly, the court finds that Williams' allegations concerning the officers' statements fail to state a claim.